**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

KAREN BOULANGER WOERNER,

      Plaintiff,

v.                              No. 1:18-CV-1231-WJ-JFR

BOARD OF EDUCATION OF RIO
RANCHO PUBLIC SCHOOLS,
and RICHARD BRUCE in his individual
and official capacity, and RANDALL
EVANS in his individual and official capacity,

      Defendants.

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT BOARD OF EDUCATION OF RIO RANCHO PUBLIC SCHOOLS
AND RICHARD BRUCE'S RULE 12(b)(1) MOTION TO DISMISS FOR LACK OF
SUBJECT-MATTER JURISDICTION
AND
GRANTING IN PART AND DENYING IN PART
THEIR 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

THIS MATTER is before the Court on Defendants Board of Education of Rio Rancho
Public Schools and Richard Bruce's Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter
Jurisdiction and Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim (**Doc. 16**). Having
reviewed the parties' briefing and considered the applicable law, the Court finds that the Rule
12(b)(1) Motion is not well-taken and is, therefore, **DENIED**. The Court further finds that
Defendants' Rule 12(b)(6) Motion is **GRANTED IN PART AND DENIED IN PART** for the
reasons set forth below.

**BACKGROUND**

This is an employment harassment, discrimination, and retaliation case wherein Plaintiff,
a former Executive Director of Information Technology at Rio Rancho Public Schools ("RRPS"),

alleges that she was subjected to gender-based harassment by a coworker, RRPS' Chief Procurement Officer, Tom Weeks ("Weeks").[1] (Doc. 15 ¶¶ 1, 9.) Plaintiff alleges that RRPS and her supervisor, Richard Bruce ("Bruce"), knew of the alleged harassment and did nothing to stop it and, moreover, that they retaliated and discriminated against her. (*Id.*)[2] Specifically, Plaintiff's 45-page, 184 paragraph First Amended Complaint ("Complaint") lays out numerous allegations of alleged harassment, including that Weeks yelled at Plaintiff, bullied her, sought to undermine and sabotage her with regard to her procurement responsibilities, "derisive[ly]" laughed when she spoke, made false accusations against her, refused to acknowledge her expertise and input, and engaged in a "irrational and concerning course of conduct," including not following "best practices for IT purchases" and delaying technology related purchase requests for months at a time. (*Id.* ¶¶14–16, 35.) Plaintiff makes a number of specific, detailed allegations with regard to Weeks' purported "concerning course of conduct" and even cites an email by a fellow employee who "registered his outrage" at Weeks' handling of procurement decisions. (*See id.* ¶¶ 17–42, 56–62.) Within this series of allegations, Plaintiff avers multiple times that Bruce and Evans did not address the issues raised by Plaintiff or other employees. (*See e.g., id.* ¶¶ 26, 28, 30, 37, 42, 62, 75, 97.)

Although Plaintiff does not allege any specific, overt instances of gender-based harassment, she summarily states that Weeks "consistently treated women with contempt and derision, but especially Plaintiff." (*Id.* ¶ 14.) Plaintiff also cites to a finding from RRPS' internal investigation that "'there is a general consensus and concern among Executive Directors and Directors'" that Weeks was difficult to work with and created "'numerous issues for

---

[1] According to Plaintiff's Complaint, Weeks no longer workers for RRPS. (Doc. 15 ¶ 131.)

[2] Plaintiff makes similar allegations against Weeks' supervisor, Randall Evans. Evans was supervised by Bruce. Evans is represented by separate counsel in his individual capacity and has filed his own Motion to Dismiss. (*See* Doc. 17.)

departments.'"  (Doc. 15 ¶ 64.)  Plaintiff alleges that during that same investigation, multiple employees reported that Weeks treated women "differently" in the sense that his difficult behavior was amplified when dealing with women as opposed to men.  (Doc. 15 ¶¶ 65–71.)  She further asserts that, "upon information and belief," Weeks did not mistreat or disregard male executive directors in similar fashion.  (*See e.g., id.* ¶¶ 32, 34,36, 40.)   Some of her allegations also include conclusory add-ons regarding gender, *e.g.*, Weeks attempted to undermine Plaintiff "because of her sex."  (*Id.* ¶¶ 1, 33, 73, 141, 162.)

RRPS and Bruce (collectively, "Defendants") now move for dismissal, alleging a lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) as to each count of Plaintiff's First Amended Complaint ("Complaint").  Plaintiff has asserted a total of ten claims:

- Count I – gender harassment under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 *et seq.*, ("Title VII") against RRPS;
- Count II – Title VII sex discrimination against RRPS;
- Count III – Title VII retaliation against RRPS;
- Count IV – Violation of the Equal Protection Clause against Bruce and Evans;
- Count V – gender harassment under the New Mexico Human Rights Act, NMSA 1978 § 28-1-1 *et seq.*, ("NMHRA") against all Defendants;
- Count VI – NMHRA sex discrimination against all Defendants;
- Count VII – NMHRA retaliation against all Defendants;
- Count VIII – violation of the New Mexico Whistleblower Protection Act, NMSA 1978 § 10-16C-1 ("NMWPA") against RRPS;
- Count IX – breach of contract against RRPS; and
- Count X – breach of the covenant of good faith and fair dealing against RRPS.

**DISCUSSION**

I.      **Plaintiff adequately exhausted her administrative remedies, giving this Court subject matter jurisdiction.**

Defendants first challenge Plaintiff's suit on the grounds that this Court lacks subject matter jurisdiction over the NMHRA claims against Defendant Bruce. (Doc. 16 at 6.)[3]

Although not specifically addressed by the Parties in their briefing, the Court notes that any jurisdiction over the NMHRA claims against Defendant Bruce arises under 28 U.S.C. § 1367, which provides for supplemental jurisdiction over all nonfederal claims that are so related to claims within a district court's original jurisdiction that such nonfederal claims form part of same case or controversy. Defendants do not appear to challenge this premise, but instead contend that supplemental jurisdiction cannot exist in this case because Plaintiff failed to adequately exhaust her administrative remedies with respect to Bruce. (Doc. 16 at 6.) Plaintiff responds that exhaustion is no longer jurisdictional, and that in any case she has exhausted her administrative remedies.[4] (Doc. 21 at 3–6.)

It is axiomatic that a court must have a basis for jurisdiction. Where subject matter jurisdiction is lacking, the Court <u>must</u> dismiss the action. Fed. R. Civ. P. 12(h)(3). Motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter

---

[3]Defendants do not challenge subject matter jurisdiction over any of Plaintiff's other claims, nor subject matter jurisdiction over the NMHRA claims against RRPS.

[4]The Court notes that while the Tenth Circuit has held that exhaustion of administrative remedies is no longer jurisdictional with respect to Title VII claims, *see Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1163–64, (10th Cir. 2018), under New Mexico law exhaustion is a jurisdictional prerequisite for NMHRA claims. *Mitchell-Carr v. McLendon*, 980 P.2d 65, 71 (N.M. 1999) ("[T]he exhaustion of administrative remedies is a prerequisite to suit under the NMHRA, and a failure to exhaust administrative remedies may mean that the district court lacks subject-matter jurisdiction."). The Court need not resolve how the Tenth Circuit's view of exhaustion as an affirmative defense rather than a jurisdictional prerequisite interplays with the New Mexico exhaustion requirement and a federal district court's supplemental jurisdiction over NMHRA claim because, as described further herein, the Court finds that Plaintiff adequately exhausted her administrative remedies.

jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based."

*Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Where the attack is facial, the Court

presumes all the allegations contained in the complaint to be true. *Id.* But where the jurisdictional

facts are attacked, no presumptive truthfulness attaches, and the Court has discretion to consider

affidavits or other documents to resolve the issue. *See Holt v. United States*, 46 F.3d 1000, 1003

(10th Cir. 1995) (citations omitted).[5]

Here, Defendants attack the underlying jurisdictional facts (Doc. 15 at 6–8). They contend

that Plaintiff failed to provide fair notice to Bruce in her administrative filing to the Equal

Employment Opportunity Commission ("EEOC") ("EEOC Complaint") and, as such, Counts V,

VI, and VII of Plaintiff's Complaint should be dismissed for want of subject matter jurisdiction.

(*Id.*) Specifically, they contend that Plaintiff was required to exhaust her administrative remedies

and failed to adequately do so with respect to Bruce because she did not name him in two of three

EEOC Complaints and, in the one where she did name Bruce, she "failed to identify any specific

discriminatory acts of Defendant Bruce." (Doc. 16 at 6.)

Defendants miss the mark. As noted by Plaintiff, the primary case relied on by Defendant

is not directly on point. (*See* Doc. 21 at 4–5.) In *Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7, 117

N.M. 380, the New Mexico Supreme Court upheld dismissal where certain defendants *were not*

named as respondents to the administrative charges but *were* included in the district court suit. In

this case though, Bruce *was* named as a Respondent in Plaintiff's February 10, 2017 EEOC

---

[5] While "[r]eliance on evidence outside the pleadings in addressing such a motion does not, as a general rule, convert the motion to one for summary judgment under Fed. R. Civ. P. 56.," "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.* Here, no conversion is required because the underlying substantive issue is whether Defendants violated federal and state law with regard Plaintiff's employment, not whether Plaintiff exhausted her administrative remedies. *See Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (addressing analogous facts). As such, the jurisdictional question is not intertwined with the merits of the case. *See Holt*, 46 F.3d at 1003; *see also Sizova v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002).

Complaint.  (Doc. 16-1).[6]  As such, the Court interprets Defendants' challenge as a challenge to the sufficiency of the allegations made in the EEOC filing.

"The exhaustion rule derives from two principal purposes:" (1) "to give notice of the alleged violation to the charged party;" and (2) "to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Smith*, 904 F.3d at 1164 (internal quotation omitted).  The relevant inquiry "is whether the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the administrative filing]." *Jones v. United Parcel Serv.*, 502 F.3d 1176, 1186 (10th Cir. 2007).   An EEOC filing must be given liberal construction.  *Id.*  "This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel" and thus precise pleading is not required at the administrative stage.  *Mitchell v. City & County of Denver*, 112 F. App'x 662, 667 (10th Cir. 2004) (unpublished).

Here, liberally construing Plaintiff's February 2017 EEOC Complaint, the Court finds that the conduct alleged by Plaintiff in the Complaint would have fallen in the scope of any EEOC inquiry resulting from her allegations that Weeks harassed and discriminated against her and that Bruce failed to take any effective action regarding the conduct.  (*See* Doc. 16-1.)  Put another way, the Court is convinced that Bruce had fair notice based on the EEOC Complaint that Plaintiff believed Bruce was liable for the harassment, discrimination, and retaliation against her.  Plaintiff literally "checked the box" on the EEOC Complaint form regarding sex discrimination and

_____

[6] Although Defendants appear to take issue with the fact that Bruce is not explicitly named in the "Name" box on the template "Charge of Discrimination" form, but rather named in the "Particulars" section (*see* Doc. 16 at 7) the Court notes that the form's instructions expressly require Plaintiff to complete the form as she did.  (*See* Doc. 16-1).  *See also Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1276–77 (D.N.M. 2011) (recognizing that the New Mexico Supreme Court would likely find that naming an individual in the body an EEOC charge is sufficient to name them as a respondent to the case).

retaliation. (*Id.*); *cf. Jones*, 502 F.3d at 1186 (explaining that where a plaintiff fails to check the appropriate box of an EEOC form, he creates a presumption that he is not asserting a claim represented by that box). Bruce was properly named as a respondent. He cannot now claim to be surprised by the allegations in the Complaint simply because the allegations therein are more specific than the general claims made in the EEOC Complaint. (*See* Doc. 16 at 7.)

Defendants also urge the Court to require Plaintiff to amend her Complaint to reflect that she is not seeking liability against Bruce for certain claims on the grounds that she has "conceded" to not naming Bruce in her second or third EEOC Complaints. (Doc. 25 at 2 n. 1.) It strikes the Court that Defendants are distorting Plaintiff's so-called "concession" beyond a reasonable interpretation. Requiring amendment is not in any way materially different than the Court dismissing those claims. And, in any case, the allegations in the first EEOC Complaint are sufficient to have put Bruce on notice. For the same reasons the Court will not grant Defendants 12(b)(1) Motion to Dismiss, it will likewise deny their request for an order requiring Plaintiff to amend.

Therefore, for all the foregoing reasons, Defendants' Rule 12(b)(1) Motion to Dismiss is **DENIED**.

## II. Defendants' Rule 12(b)(6) Motion is Granted in Part and Denied in Part as Set Forth Below.

### A. Legal Standard Under Federal Rule of Civil Procedure 12(b)(6).

Having concluded that this Court has jurisdiction over Plaintiff's claims, the Court turns to Defendants' arguments under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Complaints which are nothing more than "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions, including legal conclusions couched as factual allegations. *Id.* at 555–56.

Accordingly, "in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In deciding whether the plaintiff has adequately stated a claim for relief, we view "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff]." *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005). The key question is whether a plaintiff has nudged his or her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Additionally, because several of Plaintiff's claims sound in state law, this Court must ascertain and apply New Mexico law. In doing so, the Court must either follow the decisions of the New Mexico Supreme Court or attempt to predict what the New Mexico Supreme Court would do. *See Coll v. First Am. Title Ins. Co.,* 642 F.3d 876, 886 (10th Cir. 2011); *Federated Serv. Ins. Co. v. Martinez*, 529 F. App'x 954, 957 (10th Cir. 2013) (if no controlling state supreme court case, district court must predict how such court would rule based on intermediate appellate decisions, decisions of other states, federal decisions, and general weight and trend of authority).

   **B.**  **Plaintiff has failed to state a gender harassment claim under Title VII and the NMHRA.**

Defendants first challenge Plaintiff's gender harassment claims, both under Title VII (Count I) and under the NMHRA (Count V). (Doc. 16 at 9.) Plaintiff's claim is premised on an alleged hostile work environment and the fact that Defendants knew of the allegations of harassment and took no action to remedy the situation.

Title VII is not intended to be "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998). The standards for a hostile work environment claim are "sufficiently demanding" to ensure this is so. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (explaining that not all harassment and offensive conduct in the workplace amounts to an actionable hostile work environment). To prevail on a hostile work environment harassment claim, Plaintiff must show that (1) she was subjected to gender/sex harassment and that (2) the harassment was sufficiently severe and pervasive "such that it altered the terms or conditions of her employment and created an abusive working environment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012). As Defendants correctly note, to state a plausible claim for gender-based harassment under Title VII, Plaintiff must show "that she was the object of harassment *because of her gender*." *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) (emphasis in original) (citing *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998)). Harassment alone, however pervasive and severe, is not enough to sustain a *gender* harassment claim. *Id.; see also Stahl v. Sun Microsystems*, 19 F.3d 533, 538 (10th Cir. 1994) ("If the nature of an employee's environment, however unpleasant, *is not due to her gender*, she has not been the victim of sex discrimination as a result of that environment.") (emphasis added).

In *Harsco Corp. v. Renner*, the Tenth Circuit explained harassment because of gender/sex can be demonstrated by showing that "the harasser treats men and women differently in the

workplace."   475 F.3d 1179, 1187 (10th Cir. 2007) (internal quotation marks and citations omitted).   Accordingly, even gender-neutral conduct can rise to the level of gender-based harassment when viewed in context under the totality of the circumstances.   *See Unal v. Los Alamos Pub. Sch.*, 638 F. App'x 729, 736 (10th Cir. 2016) (citing *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 960 (10th Cir. 2012)).   That said, while "[a]ll instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII," to support an inference of gender-based animus sufficient to support a hostile work environment claim, facially neutral conduct should be considered "in the context of other, *overtly gender-discriminatory conduct*."   *O'Shea v. Yellow Tech. Servs.*, 185 F.3d 1093, 1097 (10th Cir. 1999) (internal citation omitted) (emphasis added).

Defendants argue that Plaintiff failed to plead sufficient, specific and non-conclusory facts that would allow the Court to draw the reasonable inference that RRPS and Bruce are liable for gender harassment.  (Doc. 16 at 9.)  They aver that at best Plaintiff has alleged that Weeks was essentially an "equal opportunity offender" who mistreated his coworkers regardless of their gender/sex.  (*Id.* at 11.)   Plaintiff counters by pointing to allegations in her Complaint which go to severity and pervasiveness—not whether the alleged harassment was gender based.  (Doc. 21 at 7–9.)

Here, while the Court acknowledges that Weeks' behavior as alleged in the Complaint is unprofessional and offensive, perhaps even shockingly so, the Court is unable to infer from the allegations that Weeks was motivated by an improper discriminatory animus.  By all accounts, Weeks was exceedingly difficult to work with, for men and for women.  (Doc. 15 ¶ 64.)  But Plaintiff's threadbare allegations that Weeks treated women "differently" and "based on sex," (Doc. 15 ¶¶ 65–71, 33) are precisely the "type of conclusory and formulaic recitations disregarded

by the [Supreme] Court in *Iqbal*." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

Moreover, while Plaintiff alleges that Weeks was much harsher with women than with men, those allegations do not allow the Court to infer "gender-related implications" to support a gender harassment claim. *See Riske v. King Soopers*, 366 F.3d 1085, 1091 (10th Cir. 2004). In *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir. 1998), the Tenth Circuit affirmed summary judgment even though some of the harassment included comments that were specifically gender related. *See Riske*, 366 F. 3d at 1092 (citing *Penry*). In *Riske*, the Court concluded that the conduct at issue there was even less related to gender and, as such, did not meet the standard to show that the harassment was because of the plaintiff's gender. *Id.* Plaintiff summarily states that Weeks did not treat male staff as badly and asserts that his poor treatment of male employees cannot be used to "undercut" her harassment claim. (Doc. 21 at 7.) However, as the Tenth Circuit noted in *Harsco Corp.*, a case cited by Plaintiff, it is her burden to show that Weeks treated men and women *differently*.

Here, Plaintiff does not allege any specific, discrete instances of overtly gender-based harassment, but rather relies on insufficient, conclusory allegations that Weeks treated her badly "because of her sex" and that he treated women "differently." (Doc. 15 ¶¶ 14, 33, 67–71.) While it is true that gender-neutral conduct can be considered gender-based harassment, courts have made that finding in light of other, overtly discriminatory conduct. *See Bird v. W. Valley City*, 832 F.3d 1188, 1206–06 (10th Cir. 2016) (citing *O'Shea*, 185 F.3d at 1097–98); *see also Chavez* 397 F.3d at 833. Indeed in *Bird*, the Tenth Circuit held that the evidence was insufficient to sustain a gender-based harassment claim even where it showed that the defendant treated men and women

"differently" (*e.g.,* praising men but not women, turning a blind eye to performance issues of men but not women). *Id.* at 1206.

Here, Plaintiff directs the Court to the laundry list of work-related grievances in her Complaint, but not to any specific allegations from which the Court could infer that Weeks mistreated her *because of her gender*. Plaintiff relies on the mistreatment itself to suggest impermissible motive on Weeks' part, but the allegations do not speak for themselves with respect to gender. Without more, the Court cannot make a reasonable inference that Weeks' was motivated by Plaintiff's gender, as the specific facts alleged do not nudge her gender-based harassment claim across the line from conceivable to plausible. See *Twombly*, 550 U.S. at 570. Accordingly, Plaintiff's claim fails.

Additionally, to the extent Plaintiff relies on reports by others about Weeks' treating women differently, her reliance is problematic. *See Bird*, 832 F.3d at 1207. Plaintiff must have subjectively perceived, at the time of the alleged harassment, that Weeks was treating her badly because of her sex. *Id.* (*citing Harris v. Forklift Sys.*, 510 U.S. 17, 21–22 (1993)). Here, Plaintiff admits that she did not see the investigation report on which she relies until over a year after it was created in August 2016. (Doc. 15 ¶ 63.) Without pleading that she was aware of the statements by others that Weeks treated men and women differently until after she left RRPS, she cannot use those statements "to demonstrate her subjective perception of an abusive environment based on gender." *Id.*

Defendants also argue that Plaintiff has not made a sufficient showing of severe and pervasive harassment to sustain her gender harassment claim. Because Plaintiff's failure to plead sufficient facts showing she was subjected to harassment because of her gender is dispositive, the Court declines to reach Defendants' arguments regarding severity and pervasiveness. The Court

also declines to reach the parties supervisor liability arguments, since Plaintiff has failed to state a claim for underlying gender harassment for which to hold RRPS and Bruce liable. *See Harsco Corp.*, 475 F.3d at 1186 (explaining that a plaintiff must establish the elements of a harassment claim in order for employer liability to attach).

For these reasons, Defendants' Motion is **GRANTED** as to Count I and it is **DISMISSED with prejudice**.

Additionally, with respect to Plaintiff's NMHRA gender harassment claim (Count V), "[t]he New Mexico Human Rights Act sets out the same standard for establishing wrongful discrimination as Title VII does." *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1296–97 (10th Cir. 2013) (citing *Orr v. City of Albuquerque*, 417 F.3d 1144, 1149 n.5 (10th Cir. 2005); *Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 15, 124 N.M. 633). Because the Court concludes that Plaintiff failed to state a Title VII gender harassment claim, it follows that she has failed to state a NMHRA claim.

Accordingly, Defendants' Motion is **GRANTED** as to Count V against RRPS and Bruce and it is **DISMISSED with prejudice**.

### C. Plaintiff has failed to state a sex discrimination claim under Title VII and the NMHRA.

Defendants also attack Plaintiff's sex discrimination claims under Title VII (Count II) and the NMHRA (Count VI). Plaintiff alleges that she was discriminated against in that she was put on administrative leave, her contract was not renewed, and she was not considered for rehire or for other positions within RRPS. (Doc. 15 ¶ 145). Defendants assert that these allegations, like Plaintiff's gender harassment allegations, lack the sex-based animus required to sustain a sex discrimination claim.

As with a gender-based harassment claim, the keystone of a sex discrimination claim is establishing that Plaintiff's "sex was a determining factor in the challenged decision." *Aquilino v. Univ. of Kan.*, 83 F. Supp. 2d 1248, 1254 (D. Kan. 2000) (citing *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996)).[7] Plaintiff may prove a violation "either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Khalik*, F.3d at 1192 (internal citation omitted). *McDonnell Douglas* is a burden shifting framework[8] which first requires the plaintiff to first prove a prima facie case of discrimination. *Id.* To establish a prima facie case, Plaintiff must establish that her "employer took adverse employment action against [her] *based on [her] sex*." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (emphasis added). While a Plaintiff need not establish a prima facie case to survive a 12(b)(6) motion to dismiss, the elements of the sex discrimination cause of action "help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (internal citation omitted).

As with her gender harassment claim, despite numerous allegations, Plaintiff's Complaint does not establish that she was discriminated against *because of her sex*. Plaintiff would have the Court infer more than what is reasonable based on her allegations, and instead make unsupported assumptions about Defendants' motives. As with her gender harassment claim, Plaintiff relies on the mistreatment itself to suggest impermissible motive on Defendants' parts, but the allegations do not speak for themselves.

---

[7] Again, Plaintiff's NMHRA claim is evaluated by the same standard as a Title VII sex discrimination claim. *See Bird v. Regents of N.M. State Univ.*, 619 F. App'x 733, 762 (10th Cir. 2015) (citing *Orr*, 417 F.3d at 1149 n.5); *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 9, 139 N.M. 12.

[8] The New Mexico Supreme Court has used this framework to evaluate discrimination claims. *See Juneau*, 2006-NMSC-002, ¶ 9.

Plaintiff argues that it is "puzzling how" her allegations that Weeks remained employed[9] and that a man was hired for her old job could "possible [*sic*] not constitute sex discrimination." (Doc. 21 at 12.)   While Plaintiff may be puzzled, nothing about those allegations allows the Court to infer that Defendants handled the situation with Plaintiff the way they did *because of Plaintiff's sex*.   Plaintiff asks the Court to assume that because she is a woman and Weeks is a man, sex discrimination *must* have occurred.   (*Id.*)   However, Plaintiff is asking the Court to assume too much.   Her conclusory allegations do not plausibly state a claim for sex discrimination.   *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (allegations which are merely consistent with liability are insufficient).

For these reasons, Defendants' Motion is **GRANTED** as to Count II and it is **DISMISSED with prejudice**.   Further, because Plaintiff failed to state a claim under Title VII, her NMHRA claim for sex discrimination likewise fails.   *See Bird v. Regents of N.M. State Univ.*, 619 F. App'x 733, 762 (10th Cir. 2015) (citing *Orr*, 417 F.3d at 1149 n.5); *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 9.   Accordingly, Defendants' Motion is **GRANTED** as to Count VI against RRPS and Bruce and it is **DISMISSED with prejudice.**

> D.      **Plaintiff has sufficiently stated a claim for retaliation under Title VII and the NMHRA.**

Defendants next challenge Plaintiff's Title VII and NMHRA retaliation claims (Counts III and VII, respectively).   Defendants attack each of Plaintiff's proffered instances of retaliation by asserting that there not a sufficient temporal link "between Plaintiff's protected activity and the alleged material [*sic*] adverse action" because the alleged retaliatory actions occurred too long after Plaintiff reported her concerns.   (Doc. 16 at 18.)

---

[9] Per the Complaint, Weeks did not return to RRPS after November 2017.  (Doc. 15 ¶ 131.)

Title VII prohibits employers from retaliating against an employee for opposing "any practice made an unlawful employment practice." 42 U.S.C. § 2000e-3(a). To state a prima facie claim for retaliation, Plaintiff must plead facts that plausibly show 1) she engaged in "protected opposition to discrimination" or "protected conduct," 2) she was subject to materially adverse action or action that a reasonable employee would consider materially adverse, and 3) a causal connection existed between the protected activity and the materially adverse action. *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006); *see also Juneau*, 2006-NMSC-002, ¶ 11 (elements of retaliation under the NMHRA). The elements of a prima facie claim for retaliation are illustrative, but not conclusive, in determining whether Plaintiff has sufficiently pleaded her claim. *See Khalik*, 671 F.3d at 1192 (internal citation omitted).

"Protected opposition can range from filing formal charges to voicing informal complaints to superiors." *Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1218 (10th Cir. 2008) (citation omitted). Importantly, Plaintiff need *not* establish the illegality of the allegedly discriminatory action, only that "when [she] engaged in protected opposition, [she] had a reasonable good-faith belief that the opposed behavior was discriminatory." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1016 (10th Cir. 2004). Accordingly, "[a] meritorious retaliation claim will stand even if the underlying discrimination claim fails." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998).

Defendants only challenge materially adverse action and causal connection elements. First, Defendants mischaracterize the law with respect to the materially adverse action prong. Defendants contend that Plaintiff failed to allege significant risk of humiliation, damage to reputation, or damage to future employment prospects in order to sufficiently plead a materially adverse action. (Doc. 25 at 9). But the Tenth Circuit liberally construes what constitutes materially

adverse action. *See Orr*, 417 F.3d at 1150. Under Defendants interpretation of the law, Plaintiff

must meet too high a burden. In reality, Plaintiff's burden is to show that "a reasonable employee

would have found the challenged action materially adverse," *Reinhardt v. Albuquerque Pub. Sch.

Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010) (internal quotation marks and citation omitted).

The burden is not a particularly onerous one. *See Smothers v. Solvay Chems., Inc.*, 740 F.3d 530,

539 (10th Cir. 2014). Here, Plaintiff alleges, among other conduct, that she was placed on leave,

terminated, and excluded from hiring consideration. (Doc. 15 ¶ 145.) Under the totality of the

circumstances as alleged by Plaintiff, the Court concludes that Plaintiff has successfully pleaded

this element of retaliation.

Second, Defendants' causation argument is untenable and not supported by the case law.

While it is true that when materially adverse action closely follows protected activity, a court may

presume retaliatory motive. However, the Tenth Circuit has cautioned against the overly

restrictive approach to the "closely followed" factor that Defendants now advocate this Court take.

*See Marx v. Schnuck Mkts.*, 76 F.3d 324, 329 (10th Cir. 1996). Nothing restricts this Court from

considering Plaintiff's other allegations in deciding whether she has plausibly pleaded causation.

*See Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1228 (10th Cir. 2006); *see also Juneau*, 2006-

NMSC-002, ¶ 22.

Defendants attempt to limit Plaintiff's instances of protected activity to the three EEOC

complaints she filed, rather than acknowledging all of Plaintiff's allegations of informal protected

activity where she reported Weeks' behavior. (*See, e.g.,* Doc. 15 ¶¶ 43, 54.) Such characterization

belies the ongoing nature of the conduct Plaintiff complains of, in addition to skewing the timeline

of events in Defendants' favor on the issue of temporal proximity. Defendants overly technical

argument about the lapse of time in between the reports and the conduct Plaintiff now challenges

is unavailing at this stage of the case because all allegations are viewed in the light most favorable to Plaintiff. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009). When viewed from that lens and taken as a whole, the allegations in the Complaint do state a plausible case for retaliation. Plaintiff complained multiple times about what she believed was illegal harassment. Although Defendants may disagree, the Court is able to infer from Plaintiff's allegations that a reasonable employee would have found Defendants' actions materially adverse, not only to her employment with RRPS but to future employment. Moreover, the ongoing nature of Plaintiff's complaints and the coinciding conduct by Defendants is sufficient to create a link between those complaints and that conduct in order to survive a motion to dismiss. As such, while the Court cannot infer that Defendants' actions were motived by Plaintiff's gender, the Court has no trouble inferring that those actions were motivated by Plaintiff's complaints.

Therefore, Defendants' motion is **DENIED** as to Count III. Moreover, because "[t]he NMHRA sets forth the same standard for establishing wrongful retaliation as Title VII," *Walton v. N.M. State Land Office*, 113 F. Supp. 3d 1178 (D.N.M. 2015) (citing *Orr*, 417 F.3d at 1149 n.5), the Court finds that Plaintiff has sufficient stated a claim for retaliation under the NMHRA. As such, Defendants' Motion is **DENIED** as to Count VII.

### E. Plaintiff has failed to state an equal protection claim.

Defendants next attack Plaintiff's equal protection claim (Count IV) against Defendant Bruce in his individual capacity. Plaintiff claims, in conclusory fashion, that Bruce "treat[ed] her differently than the men involved in the situation." (Doc. 15 ¶ 156.) Defendants assert that Plaintiff has failed to state a claim and that, in any case, Bruce is entitled to qualified immunity. (Doc. 16 at 21–25.)

In order to state a claim for equal protection based on sex, Plaintiff must plausibly plead that she was treated differently than similarly situated male employees. "The central focus of the inquiry in a case such as this is always whether the employer is treating some people less favorably than others *because of their . . . sex*." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978) (emphasis added). The burden is on Plaintiff to demonstrate discriminatory intent. *See Watson v. Kan. City*, 857 F.2d 690, 694 (10th Cir. 1988) (*citing Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229, 241-42 (1976)). "It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor." *Watson*, 857 F.2d at 694 (internal citation omitted).

Defendants rely principally on their prior arguments with respect to Plaintiff's Title VII harassment and discrimination claims for their contention that Plaintiff has also failed to sufficiently plead a constitutional violation to support an equal protection claim. Such reliance is well founded, because "[p]roving intentional discrimination for an equal protection claim brought under § 1983 requires the plaintiff to make the same showing required to prove a violation of Title VII." *Gerald v. Locksley*, 785 F. Supp. 2d 1074 (D.N.M. 2011); *accord Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227 (10th Cir. 2007) ("In disparate-treatment discrimination suits, the elements of a plaintiff's case are the same whether that case is brought under §§ 1981 or 1983 or Title VII.") (internal quotation marks and citation omitted). *See also Watson v. City of Cleveland*, 202 F. App'x 844, 856 (6th Cir. 2006). Accordingly, although Title VII and equal protection claims "rest on separate legal foundations," they rest on the same factual allegations and, as such, the sufficiency of pleading is reviewed under the same standard. *Cf. English v. Colo. Dep't of Corr.*, 248 F.3d 1002, 1007 (10th Cir. 2001).

Here, as discussed at length above, Plaintiff's allegations, even when viewed as a whole, in context, and in the light most favorable to Plaintiff, do not plausibly state a claim that Plaintiff was treated differently *because of her sex*. Plaintiff asserts only conclusory clauses tacked to factual allegations (*e.g.,* because of her gender, because of her sex). But such averments are not facts, and the Court is hard pressed to find anything to nudge Plaintiff's accusations across the line from conceivable to plausible where discriminatory or disparate treatment is concerned.

Additionally, because Plaintiff's failure to plead sufficient facts to state an equal protection claim is dispositive, the Court declines to address Bruce's assertions of qualified immunity. *But see Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) (explaining the overlap between the Rule 12(b)(6) and qualified immunity analyses and stating that when the plaintiff fails to state a claim, the Government actor is entitled to qualified immunity). Nor does the Court address the question of Bruce's supervisory liability, because Plaintiff has failed to state an underlying claim.

For these reasons, Defendants' Motion is **GRANTED** as to Count IV against Bruce and it is **DISMISSED with prejudice**.

> **F.** **Plaintiff Failed to State A Claim Under the New Mexico Whistleblower Protection Act.**

Defendants next attack Plaintiff's New Mexico Whistleblower Protection Act ("NMWPA") claim (Count VIII) by relying on *Wills v. Bd. of Regents of Univ. of New Mexico*, 2015-NMCA-105, ¶¶ 13–21, 357 P.3d 453, *cert. denied*, 2015 N.M. Lexis 329 (N.M., Sept. 16, 2015). (Doc. 16 at 24.) Plaintiff's NMWPA claim is premised on allegations that RRPS illegally retaliated against her after she filed a formal grievance about Weeks' conduct. (Doc. 15 ¶¶ 174–77.)

As pointed out by RRPS, the New Mexico Court of Appeals has held that the NMWPA's protections are limited in scope to whistleblower communications which benefit the public or

pertain to matters of public concern. *Id.* ¶ 21. The Court of Appeals, relying on federal precedent, explained that whistleblower protection is meant to "serve the public interest by assisting in the elimination of fraud, waste, abuse, and unnecessary Government expenditures" and does not cover a person's communications regarding maltreatment of the individual personally. *Id.* ¶ 20 (internal quotation marks and citation omitted). The Court of Appeals distinguished between "'whistleblowing' that benefits the public by exposing unlawful and improper actions by government employees from communications regarding personal personnel grievances that primarily benefit the individual employee." *Id.* The NMWPA only recognizes a cognizable claim for the former, not the latter. It is meant to protect only communications pertaining to a matter of public interest and not those made primarily for the benefit of the employee. *Kakuska v. Roswell Indep. Sch. Dist.*, No. A-1-CA-36488, 2019 N.M. App. Unpub. LEXIS 327, at *13 (N.M. Ct. App. Apr. 16, 2019) (citing *Willis*, 2015-NMCA-105, ¶¶ 20–21 and *Garrity v. Overland Sheepskin Co.*, 1996-NMSC-032, ¶ 15, 121 N.M. 710).

Defendants argue that, accordingly, Plaintiff has failed to state a claim under the NMWPA because the essence of her Complaint is the actions she personally faced, not matters of public concern. Plaintiff's counterargument is unclear, but given the allegations she points the Court to, (Doc. 15 ¶¶ 54, 72), it appears she is alleging that because others also purportedly suffered mistreatment at the hands of Weeks, the issue was one of public concern.

The Court agrees with Defendants. Plaintiff's grievances against RRPS are the kind of individual personnel and employment disputes that could arise in any context. The allegations in the Complaint relate to the actions taken against Plaintiff personally. They do not suggest that Plaintiff was exposing an abuse of power by the Government, nor that her employment grievances, even assuming others experienced them as well, rise to the level of public concern as contemplated

by the NMWPA.  *See Kakuska*, 2019 N.M. App. Unpub. LEXIS 327, at *13 (citing *Willis*, 2015-NMCA-105, and explaining that a school employee's claims that the school district violated state and federal law in regard to his employment did not render the matter one of public concern).

For these reasons, Defendants' Motion is **GRANTED** with respect to Count VIII and it is **DISMISSED** with prejudice.  Because the Court finds that Plaintiff failed to state a claim under the NMWPA, it declines to reach Defendants' statutory limitations argument on this claim.

### G.    Plaintiff Sufficiently Pleaded a Breach of Contract Claim.

Defendants also challenge Plaintiff's breach of contract claim (Count IX) against RRPS on the grounds that the statute of limitations has expired on that claim.  (Doc. 16 at 26.)  "Although a statute of limitations bar is an affirmative defense, it may be resolved on a Rule 12(b)(6) motion to dismiss 'when the dates given in the complaint make clear that the right sued upon has been extinguished." *Aldrich v. McCulloch Props.*, Inc., 627 F.2d 1036, 1041 n.4 (10th Cir. 1980)).

Plaintiff alleges that RRPS breached her contract by denying her the right to appeal the Superintendent's determination regarding her harassment complaint.  (Doc. 15 ¶ 179.)  According to the Complaint, Plaintiff had five days after "the conclusion of mediation efforts," (Doc. 15 ¶ 84), to appeal the Superintendent's memorandum of investigatory findings and conclusions to the school board.  Plaintiff alleges that the first mediation was unsuccessful so she sought another session which would have included not only Weeks, but his supervisor, Defendant Randall Evans, and Defendant Bruce as well.  (Doc. 15 ¶ 88.)  Plaintiff further alleges that such a mediation was expressly incorporated into the Superintendent's memorandum.  (Doc. 15 ¶ 88.)  RRPS does not dispute these factual allegations but contends that Plaintiff had until November 14, 2016–five days after the failed mediation—to appeal and "simply missed the deadline."  (Doc. 16 at 26–27.)

Moreover, RRPS argues that because Plaintiff's efforts to secure additional mediation failed, those efforts concluded after the first mediation. (Doc. 25 at 12.)

Reviewing the allegations in the light most favorable to Plaintiff, the Court does not find that the statute of limitations issue can be resolved on the face of the Complaint. *See Bistline v. Parker*, 918 F.3d 849, 889 (10th Cir. 2019). It is not apparent to the Court, nor, presumably, Plaintiff, when the "conclusion of mediation efforts" occurred. Indeed, assuming Plaintiff's allegations to be true, she continued to attempt to secure additional mediations and follow up on the status of those efforts until she was dismissed from her position. (Doc. 15 ¶¶ 83–96.) Plaintiff has not "ple[d] any dates which establish on the face of the complaint that [her] claims are time-barred." *Bistline*, 918 F.3d at 889. The deadline by which Plaintiff had to appeal is a factual dispute that this Court cannot, and should not, resolve at the motion to dismiss stage.

Accordingly, Defendants' motion is **DENIED** as to Count IX.

> **H**. **Plaintiff Sufficiently Pleaded a Breach of the Covenant of Good Faith and Fair Dealing Claim.**

Finally, Defendants also challenge Plaintiff's breach of implied covenant claim (Count X) against RRPS. (Doc. 16 at 27.) Plaintiff claims RRPS staff misled her regarding the status of mediation efforts and the "next steps," thus depriving of her of the benefit of her contract, namely the right to appeal. (Doc. 15 ¶¶ 83–96.) New Mexico law imposes "the duty of good faith and fair dealing" upon parties to a contract. *WXI/Z Southwest Malls Real Estate Liab. Co. v. Mueller*, 2005-NMCA-046, ¶ 25, 137 N.M. 343 (internal citation omitted). "The concept of the implied covenant of good faith and fair dealing requires that neither party do anything that will injure the rights of the other to receive the benefit of their agreement." *Planning & Design Sols. v. City of Santa Fe*, 1994-NMSC-112, ¶ 28, 118 N.M. 707. "Denying a party its rights to those benefits will breach the duty of good faith implicit in the contract." *Id.*

Defendants' argument is premised on the fact that, as they understand it, Plaintiff should have appealed the Superintendent's decision five days after the first failed mediation. (Doc. 25 at 12.) But in reviewing a Rule 12(b)(6) Motion, the Court does not consider the facts as Defendants understand them, but rather as Plaintiff has pleaded them and in the light most favorable to Plaintiff. *See United States ex rel. Reed v. Keypoint Gov't Sols.*, 923 F.3d 729, 764 (10th Cir. 2019). As described further above, according to Plaintiff the mediation efforts were still on going and she was misled as to the status of those efforts. A reasonable inference to be drawn from Plaintiff's allegations, assuming they are true, is that RRPS acted in bad faith to deprive Plaintiff of her right to appeal. Accordingly, Defendants' motion is **DENIED** as to Count X.

**CONCLUSION**

In sum, the Court concludes as follows:

1.      Plaintiff adequately exhausted her administrative remedies, giving this Court subject matter jurisdiction. Accordingly, Defendants' Rule 12(b)(1) Motion is **DENIED**.

2.      Plaintiff failed to state a claim for Counts I, II, IV, V, VI, and VIII. As such, Defendants' Rule 12(b)(6) Motion to Dismiss is **GRANTED** with respect to those Counts against RRPS and Bruce. Counts I, II, IV, V, VI, and VIII are **DISMISSED with prejudice** as to RRPS and Bruce.

3.      Plaintiff sufficiently stated claims for Counts III, VII, IX, and X. As such, Defendants' Rule 12(b)(6) Motion to Dismiss is **DENIED** with respect to Counts III, VII, IX, and X against RRPS and Bruce.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE