IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

KAREN BOULANGER WOERNER

    Plaintiff,

v.                                        No. 1:18-CV-1231-WJ-JFR

BOARD OF EDUCATION OF RIO
RANCHO PUBLIC SCHOOLS,
and RICHARD BRUCE in his individual
and official capacity, and RANDALL
EVANS in his individual and official capacity,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANT RANDALL EVANS' MOTION TO DISMISS

THIS MATTER is before the Court on Defendant Randall Evans' Motion to Dismiss (**Doc. 17**). Evans asserts multiple grounds for dismissal including qualified immunity, lack of subject matter jurisdiction, and failure to state a claim. Having reviewed the parties' briefing and considered the applicable law, the Court finds that the Motion should be **GRANTED IN PART and DENIED IN PART** for the reasons set forth below.

### BACKGROUND

This is an employment harassment, discrimination, and retaliation case wherein Plaintiff, a former Executive Director of Information Technology at Rio Rancho Public Schools ("RRPS"), alleges that she was subjected to gender-based harassment by a coworker, RRPS' Chief Procurement Officer, Tom Weeks ("Weeks").[1] (Doc. 15 ¶¶ 1, 9.) Plaintiff alleges that Weeks'

---

[1] According to Plaintiff's Complaint, Weeks no longer workers for RRPS. (Doc. 15 ¶ 131.)

supervisor, Randall Evans ("Evans"), knew of the alleged harassment and permitted it to continue. (Doc. 22 at 1–5.) Moreover, Plaintiff alleges that all Defendants,[2] including Evans, retaliated against her for reporting the alleged harassment. (Doc. 15 ¶ 1.)

Specifically, Plaintiff's 45-page, 184 paragraph First Amended Complaint ("Complaint") lays out numerous allegations of alleged harassment, including that Weeks yelled at Plaintiff, bullied her, sought to undermine and sabotage her with regard to her procurement responsibilities, "derisive[ly]" laughed when she spoke, made false accusations against her, refused to acknowledge her expertise and input, and engaged in a "irrational and concerning course of conduct," including not following "best practices for IT purchases" and delaying technology related purchase requests for months at a time. (*Id.* ¶¶14–16, 35.) Plaintiff makes a number of specific, detailed allegations with regard to Weeks' purported "concerning course of conduct" and even cites an email by a fellow employee who "registered his outrage" at Weeks' handling of procurement decisions. (*See id.* ¶¶ 17–42, 56–62.) Within this series of allegations, Plaintiff avers multiple times that Richard Bruce and Evans did not address the issues raised by Plaintiff or other employees. (*See e.g., id.* ¶¶ 26, 28, 30, 37, 42, 62, 75, 97).

Although Plaintiff does not allege any specific, overt instances of gender-based harassment, she summarily states that Weeks "consistently treated women with contempt and derision, but especially Plaintiff." (*Id.* ¶ 14.) Plaintiff also cites to a finding from RRPS' internal investigation that "'there is a general consensus and concern among Executive Directors and Directors'" that Weeks was difficult to work with and created "'numerous issues for departments.'" (Doc. 15 ¶ 64.) Plaintiff alleges that during that same investigation, multiple employees reported that Weeks treated women "differently" in the sense that his difficult behavior

---

[2] Defendants Rio Rancho Public Schools ("RRPS") and Richard Bruce filed their own Motion to Dismiss (Doc. 16), which was addressed in a prior Memorandum Opinion and Order of this Court (Doc. 33).

2

was amplified when dealing with women as opposed to men. (Doc. 15 ¶¶ 65–71.) She further asserts that, "upon information and belief," Weeks did not mistreat or disregard male executive directors in similar fashion. (*See e.g., id.* ¶¶ 32, 34, 36, 40.) Some of her allegations also include conclusory add-ons regarding gender, *e.g.*, Weeks attempted to undermine Plaintiff "because of her sex." (*Id.* ¶¶ 1, 33, 73, 141, 162.)

Plaintiff's claims against Evans include violation of the Equal Protection Clause (Count IV) and gender harassment (Count V), sex discrimination (Count VI), and retaliation (Count VII) under the New Mexico Human Rights Act, 1978 NMSA § 28-1-1 *et seq.* ("NMHRA"). Evans argues that he is entitled to dismissal of all four claims.

## DISCUSSION

### I. Plaintiff adequately exhausted her administrative remedies, giving this Court subject matter jurisdiction.

Evans, like his co-defendants (*see* Doc. 16) asserts that this Court lacks jurisdiction over Plaintiff's NMHRA claims (Counts V, VI, and VII) because Plaintiff did not properly exhaust her administrative remedies. (Doc. 17 at 16–18.) Plaintiff avers that the exhaustion requirement is no longer jurisdictional in the Tenth Circuit but that in any event she did exhaust her administrative remedies. (Doc. 22 at 12.)

As a threshold matter, the Courts notes that while the Tenth Circuit has recognized that the administrative exhaustion requirement is not jurisdictional for claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-1 et seq., ("Title VII"), *see Smith v. Cheyenne Ret. Inv'rs L.P.*, 904 F.3d 1159, 1163–64, (10th Cir. 2018), under New Mexico law exhaustion is a jurisdictional prerequisite for NMHRA claims. *Mitchell-Carr v. McLendon*, 980 P.2d 65, 71 (N.M. 1999) ("[T]he exhaustion of administrative remedies is a prerequisite to suit under the NMHRA, and a failure to exhaust administrative remedies may mean that the district court lacks

subject-matter jurisdiction."). As such, the issue before the Court is whether Plaintiff exhausted her administrative remedies with respect to the state law claims[3] against Evans.

It is axiomatic that a court must have a basis for jurisdiction. Where subject matter jurisdiction is lacking, the Court <u>must</u> dismiss the action. Fed. R. Civ. P. 12(h)(3). Motions to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction "generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Where the attack is facial, the Court presumes all the allegations contained in the complaint to be true. *Id.* But where the jurisdictional facts are attacked, no presumptive truthfulness attaches, and the Court has discretion to consider affidavits or other documents to resolve the issue. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).[4]

Here, Evans attacks the underlying jurisdictional facts and argues that Plaintiff failed to provide him fair notice of her complaints. He further asserts that the allegations in Plaintiff's EEOC charges are a "far cry" from the conduct alleged in the Complaint. (Doc. 23 at 12.)

Evans first argues that he was not properly named as a respondent in Plaintiff's February 2017 EEOC filing and objects to the sufficiency of the reference to him therein. (*Id.*) But the

---

[3] Although not specifically addressed by the Parties in their briefing, the Court notes that any jurisdiction over the Plaintiff's state law claims against Evans arises under 28 U.S.C. § 1367, which provides for supplemental jurisdiction over all nonfederal claims that are so related to claims within a district court's original jurisdiction that such nonfederal claims form part of same case or controversy.

[4] While "[r]eliance on evidence outside the pleadings in addressing such a motion does not, as a general rule, convert the motion to one for summary judgment under Fed. R. Civ. P. 56.," "a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Id.* Here, no conversion is required because the underlying substantive issue is whether Evans violated federal and state law with regard Plaintiff's employment, not whether Plaintiff exhausted her administrative remedies. *See Davis v. United States*, 343 F.3d 1282, 1296 (10th Cir. 2003) (addressing analogous facts). As such, the jurisdictional question is not intertwined with the merits of the case. *See Holt*, 46 F.3d at 1003; *see also Sizova v. Nat'l Inst. of Stds. & Tech.*, 282 F.3d 1320, 1324–25 (10th Cir. 2002).

Court notes that the form's instructions expressly require Plaintiff to complete the form as she did. (*See* Doc. 16-1). *See also Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1276–77 (D.N.M. 2011) (recognizing that the New Mexico Supreme Court would likely find that naming an individual in the body an EEOC charge is sufficient to name them as a respondent to the case). As such, the Court finds that Evans is named in Plaintiff's EEOC filing. *Compare Luboyeski v. Hill*, 1994-NMSC-032, ¶ 7, 117 N.M. 380 (New Mexico Supreme Court upheld dismissal where certain defendants were not named as respondents to the administrative charges but were included in the district court suit).

"The exhaustion rule derives from two principal purposes:" (1) "to give notice of the alleged violation to the charged party;" and (2) "to give the EEOC an opportunity to conciliate the claim, which effectuates Title VII's goal of securing voluntary compliance." *Smith*, 904 F.3d at 1164 (internal quotation omitted). The relevant inquiry "is whether the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation would which reasonably grow out of the charges actually made [in the administrative filing]." *Jones v. United Parcel Serv.*, 502 F.3d 1176, 1186 (10th Cir. 2007). An EEOC filing must be given liberal construction. *Id.* "This more lenient pleading standard contemplates the fact that administrative charges of unlawful employment practices are regularly filled out by employees who do not have the benefit of counsel" and thus precise pleading is not required at the administrative stage. *Mitchell v. City & County of Denver*, 112 F. App'x 662, 667 (10th Cir. 2004).

Here, liberally construing Plaintiff's February 2017 EEOC Complaint, the Court finds that the conduct alleged by Plaintiff in the Complaint would have fallen in the scope of any EEOC inquiry resulting from her allegations that Weeks harassed her, and that Evans failed to take any effective action regarding the conduct. (*See* Doc. 16-1.) Put another way, the Court is convinced

that Evans had fair notice based on the EEOC Complaint that Plaintiff believed Evans was liable for the harassment, discrimination, and retaliation against her. Plaintiff literally "checked the box" on the EEOC Complaint form regarding sex discrimination and retaliation (Doc. 16-1). *Cf. Jones*, 502 F.3d at 1186 (explaining that where a plaintiff fails to check the appropriate box of an EEOC form, he creates a presumption that he is not asserting a claim represented by that box). Further, as discussed above, Evans was properly named as a respondent. He cannot now claim to be surprised by the allegations in the Complaint simply because the allegations therein are more specific than the general claims made in the EEOC Complaint. (*See* Doc. 23 at 12.) While Evans advocates for a requirement of detailed specificity for the allegations in an administrative filing to past exhaustion requirement muster, he points the Court to no binding authority which so requires, and the Court is not inclined to support his propositions for him. *See Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1547 (10th Cir. 1995). And, while Evans correctly points out that he is not named in two of three charges, the allegations in the February 2017 charge are sufficient to have put him on notice.

Therefore, for all the foregoing reasons, Evans' Motion to Dismiss on subject matter jurisdiction grounds is **DENIED**.

> II. **Plaintiff failed to state a claim for gender harassment and sex discrimination, but has plausibly pleaded a claim for retaliation.**
>
> A. **Legal Standard Under Federal Rule of Civil Procedure 12(b)(6).**

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(citing *Twombly*, 550 U.S. at 556). Complaints which are nothing more than "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Although a court must accept all the complaint's factual allegations as true, the same is not true of legal conclusions, including legal conclusions couched as factual allegations. *Id.* at 555–56.

Accordingly, "in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). In deciding whether the plaintiff has adequately stated a claim for relief, we view "the totality of the circumstances as alleged in the complaint in the light most favorable to [the plaintiff]." *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005). The key question is whether a plaintiff has nudged his or her claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### B. Plaintiff has failed to state a gender harassment claim under the NMHRA.

Evans challenges Plaintiff's claim for gender harassment under the NMHRA (Count V) on the grounds that Plaintiff has insufficiently alleged that Evans created a hostile work environment or aided and abetted Weeks in so doing. (Doc. 17 at 18–19.)

"The New Mexico Human Rights Act sets out the same standard for establishing wrongful discrimination as Title VII does." *Lobato v. N.M. Env't Dep't*, 733 F.3d 1283, 1296–97 (10th Cir. 2013) (citing Orr v. City of Albuquerque, 417 F.3d 1144, 1149 n.5 (10th Cir. 2005); *Cates v. Regents of the N.M. Inst. of Mining & Tech.*, 1998-NMSC-002, ¶ 15, 124 N.M. 633); *see also Nava v. City of Santa Fe*, 2004-NMSC-039, ¶ 4, 136 N.M. 647 (noting that the NMHRA tracks parts of Title VII). Accordingly, the Court looks to federal precedent to determine whether Plaintiff has plausibly pled a claim for gender harassment based on a hostile work environment.

Title VII is not intended to be "general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 80 (1998). The standards for a hostile work environment claim are "sufficiently demanding" to ensure this is so. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998); *see also Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986) (explaining that not all harassment and offensive conduct in the workplace amounts to an actionable hostile work environment). To prevail on a hostile work environment harassment claim, Plaintiff must show that (1) she was subjected to gender/sex harassment and that (2) the harassment was sufficiently severe and pervasive "such that it altered the terms or conditions of her employment and created an abusive working environment." *Morris v. City of Colo. Springs*, 666 F.3d 654, 663 (10th Cir. 2012). To state a plausible claim for gender-based harassment under Title VII, Plaintiff must show "that she was the object of harassment *because of her gender*." *Chavez v. New Mexico*, 397 F.3d 826, 833 (10th Cir. 2005) (emphasis in original) (citing *Penry v. Fed. Home Loan Bank*, 155 F.3d 1257, 1261 (10th Cir. 1998)). Harassment alone, however pervasive and severe, is not enough to sustain a *gender* harassment claim. *Id.*; *see also Stahl v. Sun Microsystems*, 19 F.3d 533, 538 (10th Cir. 1994) ("If the nature of an employee's environment, however unpleasant, *is not due to her gender*, she has not been the victim of sex discrimination as a result of that environment.") (emphasis added).

In *Harsco Corp. v. Renner*, the Tenth Circuit explained harassment because of gender/sex can be demonstrated by showing that "the harasser treats men and women differently in the workplace." 475 F.3d 1179, 1187 (10th Cir. 2007) (internal quotation marks and citations omitted). Accordingly, even gender-neutral conduct can rise to the level of gender-based harassment when viewed in context under the totality of the circumstances. *See Unal v. Los Alamos Pub. Sch.*, 638 F. App'x 729, 736 (10th Cir. 2016) (citing *Hernandez v. Valley View Hosp.*

8

*Ass'n*, 684 F.3d 950, 960 (10th Cir. 2012)). That said, while "[a]ll instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII," to support an inference of gender-based animus sufficient to support a hostile work environment claim, facially neutral conduct should be considered "in the context of other, *overtly gender-discriminatory conduct*." *O'Shea v. Yellow Tech. Servs.*, 185 F.3d 1093, 1097 (10th Cir. 1999) (internal citation omitted) (emphasis added).

Plaintiff responds to Evans' Motion by pointing to dozens of allegations in her Complaint which she asserts more than sufficiently plead her claims. (Doc. 22 at 14 (citing Doc. 15 ¶¶ 49–97)). But, as the Court noted in its Memorandum Opinion and Order on Defendants RRPS and Bruce's Motion to Dismiss (Doc. 33), these allegations are either conclusory and formulaic and do not address how Plaintiff was mistreated *because of her gender*.

While the Court acknowledges that Weeks' behavior as alleged in the Complaint is unprofessional and offensive, perhaps even shockingly so, the Court is unable to infer from the allegations that he was motivated by an improper discriminatory animus. By all accounts, Weeks was exceedingly difficult to work with, for men and for women.[5] (Doc. 15 ¶ 64.) But Plaintiff's threadbare allegations that he treated women "differently" and "based on sex," (Doc. 15 ¶¶ 65–71, 33) are precisely the "type of conclusory and formulaic recitations disregarded by the [Supreme] Court in *Iqbal*." *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012).

Moreover, while Plaintiff alleges that Weeks was much harsher with women than with men, those allegations do not allow the Court to infer "gender-related implications" to support a

---

[5]Plaintiff summarily states that Weeks did not treat male staff as badly and asserts that his poor treatment of male employees cannot be used to "undercut" her harassment claim. (Doc. 21 at 7.) However, as the Tenth Circuit noted in *Harsco Corp.*, a case cited by Plaintiff, it is her burden to show that Weeks treated men and women *differently*. Plaintiff's allegations do not meet this burden because her allegations show that Weeks treated everyone poorly, both male and female.

9

gender harassment claim. *See Riske v. King Soopers*, 366 F.3d 1085, 1091 (10th Cir. 2004). In *Penry v. Federal Home Loan Bank of Topeka*, 155 F.3d 1257 (10th Cir. 1998), the Tenth Circuit affirmed summary judgment even though some of the harassment included comments that were specifically gender related. *See Riske*, 366 F. 3d at 1092 (citing *Penry*). In *Riske*, the Court concluded that the conduct at issue there was even less related to gender and, as such, did not meet the standard to show that the harassment was because of the plaintiff's gender. *Id.* Plaintiff summarily states that Weeks did not treat male staff as badly and asserts that his poor treatment of male employees cannot be used to "undercut" her harassment claim. (Doc. 21 at 7.) However, as the Tenth Circuit noted in *Harsco Corp.*, a case cited by Plaintiff, it is her burden to show that Weeks treated men and women *differently*.

Here, Plaintiff does not allege any specific, discrete instances of overtly gender-based harassment and relies, to her detriment, on conclusory allegations that Weeks treated her badly "because of her sex" and that he treated women "differently." (Doc. 15 ¶¶ 14, 33, 67–71.) While it is true that gender-neutral conduct can be considered gender-based harassment, courts have made that finding in light of other, overtly discriminatory conduct. *See Bird v. W. Valley City*, 832 F.3d 1188, 1206–06 (10th Cir. 2016) (citing *O'Shea*, 185 F.3d at 1097–98; *see also Chavez* 397 F.3d at 833. Indeed in *Bird*, the Tenth Circuit held that the evidence was insufficient to sustain a gender-based harassment claim even where it showed that the defendant treated men and women "differently" (*e.g.,* praising men but not women, turning a blind eye to performance issues of men but not women). *Id.* at 1206.

Further, Plaintiff directs the Court to the laundry list of work-related grievances in her Complaint, but not to any specific allegations from which the Court could infer that Weeks mistreated her *because of her gender*. Plaintiff relies on the mistreatment itself to suggest

10

impermissible motive on Weeks' part, but the allegations do not speak for themselves with respect to gender. Without more, the Court cannot make a reasonable inference that Weeks' was motivated by Plaintiff's gender, as the specific facts alleged do not nudge her gender-based harassment claim across the line from conceivable to plausible. See *Twombly*, 550 U.S. at 570. Accordingly, Plaintiff's claim fails.

Additionally, to the extent Plaintiff relies on reports by others about Weeks' treating women differently, her reliance is problematic. See *Bird*, 832 F.3d at 1207. Plaintiff must have subjectively perceived, at the time of the alleged harassment, that Weeks was treating her badly because of her sex. *Id.* (*citing Harris v. Forklift Sys.*, 510 U.S. 17, 21–22 (1993)). Here, Plaintiff admits that she did not see the investigation report on which she relies until over a year after it was created in August 2016. (Doc. 15 ¶ 63.) Without pleading that she was aware of the statements by others that Weeks treated men and women differently until after she left RRPS, she cannot use those statements "to demonstrate her subjective perception of an abusive environment based on gender." *Id.*

Because Plaintiff failed to plausibly plead underlying gender-based harassment, the Court need not determine whether she successfully pleaded that Evans could be liable for the same. See *Harsco Corp.*, 475 F.3d at 1186. Evans Motion to Dismiss is **GRANTED** with respect to Count V and it is **DISMISSED with prejudice**.

### C. Plaintiff has failed to state a sex discrimination claim under the NMHRA.

Evans also challenges Plaintiff's NMHRA sex discrimination claim (Count VI). (Doc. 17 at 20.) He argues that the allegations in the Complaint are insufficient to allow for the inference that Plaintiff was subjected to a hostile work environment based on her gender, let alone that Evans aided and abetted anyone in doing so. (Doc. 23 at 9.)

11

As with a gender-based harassment claim, the keystone of a sex discrimination claim is establishing that Plaintiff's "sex was a determining factor in the challenged decision." *Aquilino v. Univ. of Kan.*, 83 F. Supp. 2d 1248, 1254 (D. Kan. 2000) (citing *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996)).[6] Plaintiff may prove a violation "either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (internal citation omitted). *McDonnell Douglas* is a burden shifting framework[7] which first requires the plaintiff to first prove a prima facie case of discrimination. *Id.* To establish a prima facie case, Plaintiff must establish that her "employer took adverse employment action against [her] *based on [her] sex*." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017) (emphasis added). While a Plaintiff need not establish a prima facie case to survive a 12(b)(6) motion to dismiss, the elements of the sex discrimination cause of action "help to determine whether Plaintiff has set forth a plausible claim." *Khalik*, 671 F.3d at 1192 (internal citation omitted).

As with her gender harassment claim, despite numerous allegations, Plaintiff's Complaint does not establish that she was discriminated against *because of her sex*. Plaintiff would have the Court infer more than what is reasonable based on her allegations, and instead make unsupported assumptions about Evans' motives with nothing more than summarily asserting that she was placed on leave, was not given a contract renewal, and was not considered for rehire or other positions. What is more, Plaintiff does not sufficiently allege how Evans was personally involved in these

---

[6] Again, Plaintiff's NMHRA claim is evaluated by the same standard as a Title VII sex discrimination claim. *See Bird v. Regents of N.M. State Univ.*, 619 F. App'x 733, 762 (10th Cir. 2015) (citing *Orr*, 417 F.3d at 1149 n.5); *Juneau v. Intel Corp.*, 2006-NMSC-002, ¶ 9, 139 N.M. 12.

[7] The New Mexico Supreme Court has used this framework to evaluate discrimination claims. *See Juneau*, 2006-NMSC-002, ¶ 9.

decisions.  Plaintiff asks the Court to assume that because she is a woman and Weeks a man that sex discrimination *must* have occurred.  (Doc. 22 at 7).  However, Plaintiff is asking the Court to assume too much.  Her conclusory allegations do not plausibly state a claim for sex discrimination. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (allegations which are merely consistent with liability are insufficient).

As with her gender-based harassment claim, because Plaintiff has failed to state a claim for sex discrimination, the Court does not reach the question of whether she successfully pleaded that Evans could be held liable for the same.  Evans Motion to Dismiss is **GRANTED** as to Count VI and it is **DISMISSED with prejudice**.

### D. Plaintiff has plausibly pleaded a retaliation claim under the NMHRA.

Evans also attacks Plaintiff's NMHRA retaliation claim (Count VII).  (Doc. 17 at 20–22.) Plaintiff alleges that Evans contacted her new employer after she left RRPS to falsely inform the new employer that Plaintiff was responsible for the "largest procurement issue in RRPS history." (Doc. 15 at 135.)

The elements of a prima facie case retaliation are illustrative, but not conclusive, in determining whether Plaintiff has sufficiently pleaded her claim.  *See Khalik*, 671 F.3d at 1192 (internal citation omitted).  To state a prima facie claim for retaliation, Plaintiff must plead facts that plausibly show 1) she engaged in "protected opposition to discrimination" or "protected conduct," 2) she was subject to materially adverse action or action that a reasonable employee would consider materially adverse, and 3) a causal connection existed between the protected activity and the materially adverse action.  *Argo v. Blue Cross and Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006); *see also Juneau*, 2006-NMSC-002, ¶ 11 (same elements of retaliation under the NMHRA).  "Protected opposition can range from filing formal charges to

13

voicing informal complaints to superiors." *Fye v. Oklahoma Corp. Commission*, 516 F.3d 1217, 1218 (10th Cir. 2008) (citation omitted). Importantly, Plaintiff need *not* establish the illegality of the allegedly discriminatory action, only that "when [she] engaged in protected opposition, [she] had a reasonable good-faith belief that the opposed behavior was discriminatory." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1016 (10th Cir. 2004). Accordingly, "[a] meritorious retaliation claim will stand even if the underlying discrimination claim fails." *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998).

Evans challenges Plaintiff's retaliation claim on grounds that Plaintiff's EEOC filing in February 2017 and his contacting Plaintiff's new employer in July 2018 are too temporally removed to support a claim of retaliation. (Doc. 17 at 21.) He further asserts that because he was not named as a Respondent to that EEOC charge, there is nothing to suggest that Evans even knew that Plaintiff had engaged in protected opposition against him and as such there is no causal link between the EEOC charge and his calling her new employer. (*Id.*)

While it is true that when materially adverse action closely follows protected activity a court may presume retaliatory motive, the Tenth Circuit has cautioned against the overly restrictive approach to the "closely followed" factor that Evans now advocates this Court take. *See Marx v. Schnuck Mkts.*, 76 F.3d 324, 329 (10th Cir. 1996). Nothing restricts this Court from considering Plaintiff's other allegations in deciding whether she has plausibly pleaded causation. *See Haynes v. Level 3 Communs.*, 456 F.3d 1215, 1228 (10th Cir. 2006); *see also Juneau*, 2006-NMSC-002, ¶ 22 (discussing how the New Mexico Supreme Court refused to adopt a "specific time period for inferring facts related to causation" and explaining how timing was but one "piece of the evidentiary formulation").

Evans attempts to limit Plaintiff's instances of protected activity to the EEOC charge filed in February 2017, rather than acknowledging all of Plaintiff's allegations of informal protected activity where she reported Weeks' behavior. (*See, e.g.,* Doc. 15 ¶¶ 43, 54.) Such characterization belies the ongoing nature of the conduct Plaintiff complains of, in addition to skewing the timeline of events in Evans' favor on the issue of temporal proximity and causation. Evans overly technical argument about the lapse of time in between the reports and the conduct Plaintiff now challenges is unavailing at this stage of the case because all allegations are viewed in the light most favorable to Plaintiff. *See Smith v. United States*, 561 F.3d 1090, 1097 (10th Cir. 2009). When viewed from that lens and taken as a whole, the allegations in the Complaint do state a plausible case for retaliation. While the Court cannot infer that Defendants' actions were motived by Plaintiff's gender, the Court has no trouble inferring that those actions were motivated by Plaintiff's complaints.

Therefore, Evans' motion is **DENIED** as to Count VII.

### III.     Plaintiff has failed to state an equal protection claim.

Finally, Evans attacks Plaintiff's equal protection claim (Count IV).[8] (Doc. 17 at 8.) Evans avers that Plaintiff not only failed to plausibly plead a constitutional violation, but that the law was not clearly established with respect to his actions. (*Id.* at 8–16.) *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Where a Plaintiff has failed to state a claim for a violation of a constitutional right, the Government actor is entitled to qualified immunity. *See Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018).

---

[8] Because "[p]roving intentional discrimination for an equal protection claim brought under § 1983 requires the plaintiff to make the same showing required to prove a violation of Title VII," *Gerald v. Locksley*, 785 F. Supp. 2d 1074 (D.N.M. 2011), the Court addressed Evans' arguments out of the order presented in his brief for ease of reading.

In order to state a claim for equal protection based on sex, Plaintiff must plausibly plead that she was treated differently than similarly situated male employees. "The central focus of the inquiry in a case such as this is always whether the employer is treating some people less favorably than others *because of their . . . sex*." *Furnco Constr. Corp. v. Waters*, 438 U.S. 567 (1978) (emphasis added). The burden is on Plaintiff to demonstrate discriminatory intent. *See Watson v. Kan. City*, 857 F.2d 690, 694 (10th Cir. 1988) (*citing Village of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229, 241-42 (1976)). "It is not necessary to demonstrate that the challenged action was taken solely for discriminatory purposes; it is necessary only to prove that a discriminatory purpose was a motivating factor." *Watson*, 857 F.2d at 694 (internal citation omitted).

As discussed at length above and in this Court's prior Memorandum Opinion and Order (Doc. 33) although Plaintiff lays out a litany of conduct to which she objects in her First Amended Complaint ("Complaint"), none of the allegations nudge Plaintiff's claims regarding disparate treatment across the line from conceivable to plausible. See *Twombly*, 550 U.S. at 570.

Because Plaintiff has failed to sufficiently allege an underlying constitutional violation, *see Pearson*, 555 U.S. at 232, the Court declines to reach Evan's argument regarding the clearly established prong of qualified immunity. *Id.*

Evans' Motion is **GRANTED** as to Count IV against Evans and it is **DISMISSED with prejudice**.

## CONCLUSION

In sum, the Court concludes as follows:

1. Plaintiff adequately exhausted her administrative remedies, giving this Court subject matter jurisdiction. Accordingly, Evans' Motion to Dismiss for failure to exhaust administrative remedies is **DENIED**.

2. Plaintiff failed to state claims for gender harassment and for sex discrimination under the NMHRA. Accordingly, Evans' Motion to Dismiss is **GRANTED** as to Counts V and VI. Counts V and VI against Evans are **DISMISSED with prejudice**.

3. Plaintiff sufficiently stated a claim for retaliation against Evans. As such, Evans' Motion to Dismiss is **DENIED** with respect to Count VII against Evans.

4. Plaintiff failed to state an equal protection claim against Defendant Evans in Count IV of her Complaint. Evans' Motion to Dismiss is, therefore, **GRANTED**. Count IV against Evans is **DISMISSED with prejudice**.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE